[S. F. No. 16766.   In Bank.   Dec. 1, 1942.]

RAYMOND SUBLETT, Respondent, v. HENRY'S TURK
AND TAYLOR LUNCH (a Corporation) et al., Appellants.

Milton Marks for Appellants.

Melvin M. Belli and Belli & Leahy for Respondent.

Irving Shore, Charles J. Janigian, Mathew O. Tobriner and Rinaldo Sciaroni, Jr., as Amici Curiae, on Behalf of Respondent.

GIBSON, C. J.—This is an action by an employee to recover that portion of the compensation paid him by the defendant employer which he was compelled to return immediately to the employer under a so-called "kick-back" scheme. The plaintiff, Raymond Sublett, was a member of the Waiters' and Dairy Lunchmen's Union, Local 30, affiliated with the American Federation of Labor. The trial court found that on or about the first day of February, 1936, the defendants contracted and agreed with Local Number 30 to pay the union scale of wages, and that this contract was in full force and effect during the period involved herein. From February, 1936, until June, 1937, plaintiff was employed in various capacities by the defendant corporation and during that period, although his salary checks were issued in the amount called for by the union scale, plaintiff returned amounts varying from $2.50 to $44 per week to the employer. The trial court found that the sum of $885 had been turned back to the employer under this plan, and rendered a judgment in favor of plaintiff for that sum plus the interest thereon.

Since 1937 the provisions of the Labor Code have specifically declared that such a transaction as is involved in this case is unlawful. (Labor Code, §§ 221-223.) These sections, which have no application to the present case because the acts here involved antedated the statute, are declarative of an underlying policy in the law which is opposed to fraud and deceit. In this action, however, it was not contended either in the trial court or upon appeal that plaintiff's right to recovery depends upon the unlawful nature of the transaction. Rather, it is argued, that plaintiff is an intended beneficiary of a contract between Local 30 and defendants

requiring them to pay union wages. The kick-back scheme, it is said, constitutes a breach of that contract for which an action in damages will lie on behalf of the employee-beneficiary. Although no exact precedent has been found in the decided cases in this state, the theory of this action finds support in certain of our decisions and it follows cases decided elsewhere. Thus, California recognizes the interests of intended third party beneficiaries and permits the enforcement of those interests in actions upon the contract. (Civ. Code, § 1559; *D. Ghirardelli Co.* v. *Hunsicker,* 164 Cal. 335 [128 P. 1041]; see Langmaid, *Contracts for the Benefit of Third Persons in California,* (1939) 27 Cal.L.Rev. 497.) The conclusion that the employee is an intended beneficiary of a contract between a union and an employer to pay union wages has been reached by most of the courts which have considered the problem. (See Williston, Contracts (Rev.Ed. 1936), § 379 A, p. 1100; 1 Teller, Labor Disputes and Collective Bargaining (1940), § 168; and *cf.* contra (1942) 91 U.ofPa.L.Rev. 83.) Plaintiff relies upon such decisions to support the trial court's judgment in his favor.

On appeal, however, defendants attack a material finding upon which the judgment rests and contend that it is unsupported by evidence. The trial court, adopting the language of plaintiff's complaint, found that "defendants, and each of them, by written instruments, contracted and agreed with said Waiters' and Dairy Lunchmen's Union, Local No. 30 . . . to pay the union scale of wages as provided in said written instruments." The allegation of the complaint and the finding of the trial court are clearly predicated upon the existence of a written contract to pay union wages between the union and the employer. Defendants argue that there is no evidence to support the finding that a written contract existed between the union and the employer and that the judgment for plaintiff must therefore be reversed.

In this action no written agreement between the parties was introduced in evidence. Ordinarily, where a written contract is relied upon, its introduction is required because it is the best evidence of the actual agreement. (Code of Civ. Proc., §§ 1937, 1855; *cf. Alvord* v. *Spring Valley G. Co.,* 106 Cal. 547, 554 [40 P. 27]; *Mutual Bldg. & Loan Assn.* v. *Corum,* 16 Cal.App.2d 212, 214 [60 P.2d 316]; see, also, 10

Cal. Jur. 850; 4 Wigmore, Evidence (1940), §§ 1174, 1175, 1177 et seq.) Where, as in the present case, no objection is made to the admission of secondary evidence for the purpose of proving the terms of the agreement, there is no error in the trial court's consideration of such evidence. (*Wright* v. *Roseberry*, 81 Cal. 87 [22 P. 336]; *cf. Holzer* v. *Read*, 216 Cal. 119, 123 [13 P.2d 697]; see 10 Cal.Jur. 858; 120 A.L.R. 205, 218.) ■ The evidence relied upon in the present case to support the trial court's finding that a written contract to pay union wages existed between the union and the employer is in the form of both documentary evidence and testimony. One of the documents introduced in evidence was a so-called "union house card" issued, not by Local 30, but by an international hotel and restaurant workers' union with which Local 30 was affiliated. The card contained the following language: "The person or persons displaying this card do so in accordance with the contract entered into with a subordinate Local Union, located in the city where card is displayed. . . . The holder of this card agrees to comply at all times with the laws, rules and regulations of the local union which issued said card to him." Testimony indicated that such a card was displayed by defendants during the period here involved. This evidence, which supports the conclusion that a contract of some kind existed between Local 30 and the defendants, offers no support whatever for the finding that a written contract to pay union wages was entered into by defendants. Similarly, the "joint wage scale" issued by Local 30, which was introduced in evidence, merely sets forth the union scale of wages in effect at a particular time and gives no indication whatever of the identity of the employers who had agreed to be bound thereby. Finally, a so-called "license agreement" was introduced in evidence. This document, which was issued by the international union whose house card has already been referred to, was actually a blank form of the agreement by which employers are ordinarily "licensed" to display the union house card. None of the blank spaces were filled in and the form was unsigned. The business agent of Local 30 testified, however, that whenever a union house card was given to an employer, it was customary for a "license agreement" to be executed. No support can be found in such evidence for the finding that de-

fendants entered into a *written* contract with Local 30 to pay union wages. The trial court's finding that defendants agreed to pay union wages by instruments in writing is thus without support in the evidence.

■ Where a finding is unsupported by evidence, reversal of the judgment is required only if the finding is a material one. (*Fagan* v. *Lentz,* 156 Cal. 681, 688 [105 P. 951, 20 Ann.Cas. 221]; *Supreme Grand Lodge, etc.* v. *Smith,* 7 Cal. 2d 510 [61 P.2d 449]; *Haese* v. *Heitzeg,* 159 Cal. 569, 573 [114 P. 816]; see 2 Cal.Jur. 1028 et seq.) In the present case the trial court's finding that defendants had entered into a written contract to pay union wages has a material bearing upon plaintiff's right to recover. The period of employment for which recovery is sought lasted from 1936 until June, 1937, and the complaint in this action was filed on February 4, 1939. It is apparent under these facts, and conceded by plaintiff, that if an oral contract instead of a written contract were proved, the two-year statute of limitations would materially reduce the amount of plaintiff's recovery. (Code of Civ. Proc., § 339.)

■ Nor can the judgment be sustained upon the theory that the trial court may be considered to have found that an oral contract to pay union wages was entered into by defendants. Proof of an oral contract where a written agreement has been alleged is a material variance between pleading and proof which requires a reversal if the variance has actually misled the adverse party to his prejudice. (Code of Civ. Proc., § 469.) Where a written contract is alleged and an oral contract is proved, the variance is material if it has resulted in misleading the adverse party by depriving him of the defense afforded by the statute of limitations. (*San Francisco Stevedoring Co.* v. *Associated Ind. Corp.,* 137 Cal.App. 117, 124 [29 P.2d 890]; *cf. Nichols* v. *Randall,* 136 Cal. 426, 431 [69 P. 26].) At the trial, in connection with the proof of damage to be offered, there was a discussion between court and counsel involving the statute of limitations in which defendants' counsel participated. The court's remarks were in the form of questions and much of the discussion concerned the contract made between defendants and plaintiff (the kickback agreement) rather than the contract between defendants and the union. It cannot be argued successfully that this discussion renders the variance immaterial in view of the fact that plaintiff pleaded a written contract, that the case was

tried and the findings prepared upon the basis of a written contract and that the case was argued on appeal upon the theory of the existence of a written contract. Under such circumstances, the judgment cannot be affirmed upon the belief that the trial court could have found that an oral contract to pay union wages existed between defendants and Local 30, without giving the trial court an opportunity to determine whether an oral contract existed and the defendants an opportunity to plead the statute of limitations applicable thereto. This is particularly so where, as here, a claim upon an oral contract would be barred, in part at least, by the statute of limitations. It does not follow, however, that the variance is fatal to plaintiff's action. If the evidence produced is sufficient to convince the trial court that an oral agreement to pay union wages existed between defendants and Local 30, an amendment of the pleadings to conform to the proof should be ordered upon such terms as may be just to defendants.

The judgment is reversed for further proceedings in conformity with the decision of this court.

Shenk, J., Curtis, J., Edmonds, J., Traynor, J., and Schauer, J. pro tem., concurred.

CARTER, J.—I dissent. I cannot agree with the result reached in the majority opinion. The case is simply one of an action by a union employee to recover the wage scale fixed by a collective bargaining agreement to pay the union wage scale between the union and the defendant, employer. It is conceded in the majority opinion that such an action will lie under the third party beneficiary contract theory, and that there is sufficient evidence in the record to establish an agreement between the union and the defendant employer. The judgment is reversed solely upon the ground that the complaint and findings concern a *written* agreement whereas the evidence supports an oral agreement. Neither the allegations in the complaint nor the findings necessarily preclude the existence of an oral contract. It is alleged in the complaint that defendants, "by written instruments" contracted with the union. Thereafter the particular instruments described in the opinion are referred to. The findings follow the complaint. The oral agreement which the evidence establishes is founded on the instruments and the conduct of the parties

from which flows an implied in fact agreement. Therefore as far as they go the findings are correct in stating that the contract was *by* written instruments. It was by written instruments and other evidence. This does not create such a fatal variance between the proof and the pleadings and findings as to require a reversal.

In any event defendant has waived any variance and has not been prejudiced. *It did not object to any of the evidence.* It in fact practically conceded the truth of plaintiff's evidence. It never at any time asserted that a fatal or any variance existed. Its sole contention was that under the facts, plaintiff could not, as a matter of law, prevail, and denied the existence of any agreement oral or written. It is said in the majority opinion that "Where a written contract is alleged and an oral contract is proved, the variance is material if it has resulted in misleading the adverse party by depriving him of the defense afforded by the statute of limitations." Here the *defendant was never misled. It did not plead the statute of limitations in its answer;* it merely denied the existence of any agreement. After plaintiff's evidence was introduced *without objection* by defendant, the trial court called the parties' attention to the statute of limitations, two years on an oral contract and four years on a written one, but defendant made no effort to amend its answer and plead the statute although plaintiff's evidence was all in and it knew the basis of his claim. The following occurred at the close of the trial: "The Court: In other words, you want to reduce it down simply to a question of consideration of the agreement between the parties, irrespective of whether they violated any rules and even though there was a contract with the third party to pay the union scale, if the parties had made a contract—any consideration of the amounts paid— Mr. Marks: (Defendant's counsel) That is correct. Therefore there would be no purpose served in going into lengthy testimony, item by item, month by month; it becomes first, as I say, purely a question of law, taking Mr. Sublett's testimony. The Court: *How about the statute of limitations?* Mr. Marks: *I had not thought of that. There is no written contract* between the parties. The suit was filed in February, 1939, and a great deal of this money had matured. The Court: Beyond the two years. Mr. Belli: (Plaintiff's counsel) I wonder if it need be a written contract for the payment of wages in the first place? Mr. Marks: All of those are matters

of law, and no witness could testify to those phases. . . .
The Court: That is all right, but I think under the statute
of limitations there is no agreement in writing between the
respective parties here as to the question of salary, and a
great deal of this had matured by February, 1937. Mr. Marks:
At all events, if the court please, again, as far as the union
card and those things are concerned, by our absence of proof
of the defendants, *we are not denying the testimony offered
that the card was displayed and those instruments were in
existence.* There is no testimony to contradict that. . . . The
Court: Is there any argument? Mr. Marks: For the record,
and I think perhaps your Honor would want to reserve it
until we submit memorandums, I desire to move for a non-
suit, and that, of course, could be reserved.''

It is obvious from the foregoing that defendants were not
prejudiced by plaintiff's failure to plead an oral instead
of a written contract. Even after the trial court called at-
tention to the statute of limitations, counsel for defendants
did not ask leave to amend his answer and plead the appli-
cable statute. This clearly constituted a waiver of such plea.
The defendants continued to rely upon their contention that
there was no valid agreement as a basis for plaintiff's cause
of action. All of the discussion in the majority opinion in
regard to defendants being misled to their prejudice as the
result of a material variance between the pleading and proof
of plaintiff's cause of action is beside the point. Such preju-
dice was not claimed by defendants in the trial court. They
saw fit to rely solely upon the theory that plaintiff had no
cause of action for the recovery sought. The issue was thus
essentially whether there was any agreement, and if so, its
legal effect.

Defendants could have pleaded the statute of limitations
before the submission of the cause if they desired to rely
thereon as a defense to any portion of plaintiff's demand.
Not having done so, such defense was waived.

It is elementary that unless the applicable statute of limi-
tation is pleaded, it is waived and cannot be relied upon as
a defense. (16 Cal.Jur. 603.)

Such is the situation presented by the record in this case,
and in my opinion the judgment should be affirmed.