Herbert BRIDGES et al., Appellants,

v.

F. H. McGRAW & COMPANY, Appellee.

Court of Appeals of Kentucky.

March 29, 1957.

Rehearing Denied June 7, 1957.

Joseph S. Freeland, Francis T. Goheen, Paducah, for appellants.

James G. Wheeler, Paducah, for appellee.

STANLEY, Commissioner.

The circuit court dismissed for want of jurisdiction the complaint of the appellants, Herbert Bridges and Robert C. Newman, against F. H. McGraw and Company, appellee, which sought a declaration of rights and recovery of certain travel pay claimed to be due them and other employees under a bargaining agreement made with their labor union. The judgment rests on the conclusion that jurisdiction lies in the federal court by virtue of § 301 of the National Labor Relations Act, popularly known as the Taft-Hartley Act, 29 U.S. C.A. § 185. A similar complaint filed in the United States District Court for the Western District of Kentucky by the local union and these two individuals jointly had been dismissed by that court for want of jurisdiction. The appellants very reasonably ask, "If both these decisions are sound, where may we go for relief?"

The appellee was the principal contractor of the United States Atomic Energy Commission in the construction of a large plant located near Paducah during the years 1951 and 1952. A collective bargaining agreement between the contractor and the United Brotherhood of Carpenters and Joiners of America provided that the contractor would pay the wages prescribed and abide by the rules and regulations of the affiliated union in the locality. Local Union No. 559, to which the plaintiffs belonged, was affiliated with the general union in that locality. The complaint charges that during the year 1951 its rules and regulations "required the payment to carpenters and millwrights when working more than ten miles from the City of Paducah of travel pay at the rate of $1.00 per trip," and that during the year 1952 they required the payment of an additional 12½ cents per hour to such workmen when working more than five miles from the city.

The complaint avers that during both years all the carpenters and millwrights were employed more than ten miles from Paducah and were entitled to receive the travel pay and additional wage, but the defendant had, in violation of its agreement, failed and refused to pay the same. The complaint further charges that the defendant owes each of the said union members a "substantial sum of money, the exact amount of which is not known to the plaintiffs" but is shown on the records of the defendant. It is stated that the number and names of all the workmen entitled to the pay are unknown to the plaintiffs, but they believe the number to exceed 2,000, and that the aggregate sum owing to the workmen is not less than $250,000.

The plaintiffs brought the action for themselves individually and as representative and on behalf of all members of their union. Appropriate allegations are made as to the existence of an actual controversy with respect to liability. The plaintiffs prayed (1) a declaration of rights, (2) judgment of liability on the part of the defendant, (3) a disclosure and accounting, and (4) recovery of sums due the union members.

The defendant raised questions of jurisdiction and the right of the plaintiffs to sue

in a representative capacity or at all. It admitted the several contractual relations and certain other facts but traversed specifically and generally all the allegations pertaining to liability.

The defendant specially pleaded that the plaintiffs were seeking to maintain the action under § 301 of the Taft-Hartley Act and that by the enactment Congress had pre-empted jurisdiction, so that rights under it can be adjudged only in the federal courts. In response, the plaintiffs filed the record in the previous case in the federal court. In that case the local union and the two individuals as joint plaintiffs had invoked jurisdiction under § 301 of the Taft-Hartley Act and also upon diversity of citizenship. The defendant had challenged the jurisdiction of the subject matter and also charged that the union was not the real party in interest within the meaning of Federal Rule 17, 28 U.S.C.A. The order of the court merely sustained the defendant's motion to dismiss the complaint "for want of jurisdiction." There is controversy in the pleadings and the argument of the present case as to the grounds of the conclusion.

Section 301(a) of the Taft-Hartley Act, 29 U.S.C.A. § 185, is as follows:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Since this confers jurisdiction in actions within its scope "without respect to the amount in controversy or without regard to the citizenship of the parties" we think it is implicit in the dismissal order of the United States District Court that it was based upon some other ground than diversity of citizenship. In the argument

before us it was said to have been under the ruling of Association of Westinghouse Salaried Employees v. Westinghouse Electrical Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, to be considered later.

The appellants maintain that the judgment of the United States District Court is res judicata the question of jurisdiction of the state court. We do not consider this intricate plea but go directly to the question and determine it initially.

■ As a start, we must recognize a citizen's fundamental privilege of access to the courts for redress of injury done him in his rights and to employ the usual remedies for the enforcement thereof in actions of every kind. Kentucky Bill of Rights, § 14, Constitution. This, of course, relates to Kentucky courts, subject to the exercise of delegated powers of the federal government. And we must recognize the elementary fact that state courts have jurisdiction in all cases within their local commitments unless within its constitutional power Congress has pre-empted a particular field and has expressly or impliedly assigned exclusive jurisdiction to the federal courts. It ought, therefore, to be clear and certain from the particular enactment that Congress has deprived a citizen of his right to resort to the courts of his state.

There is a feeling that the purpose of Congress in its progressive expansion of the regulation of commerce between the states is to have the federal government take over complete control of management-labor relations, including judicial power in respect thereto. See comment as to "multiplicity of tribunals and a diversity of procedures" in Garner v. Teamsters, C. & H. Local Union, 346 U.S. 485, op. cit. 490–491, 74 S.Ct. 161, op. cit. 166, 98 L.Ed. 228. Cf. Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640, holding the congressional purpose was to pre-empt the field of anti-sedition legislation, and this precluded enforcement of state statutes against sedition. It was by

force of this federal control of labor-management relations that the present contract between the union and the employer was executed. True, the rights asserted in the complaint are founded upon that contract, but the suit is particularly a common law action by individual employees to recover wages alleged to be due them under a contract of hire, the terms of which are defined in the collective agreement made for their benefit under the auspices of the federal law.

 In later years it has been generally regarded that a collective bargaining agreement establishes in a general way reciprocal rights and responsibilities of the employer, the employees collectively and the union. The agreement "establishes no concrete contract between the employer and any employee, but is only an agreement as to terms on which contracts of employment may be satisfactorily made and carried out." 31 Am.Jur., Labor, § 97. It is contemplated that those terms are to be incorporated in separate contracts of hire with each employee. MacKay v. Loew's, Inc., 9 Cir., 182 F.2d 170, 18 A.L.R.2d 348. When one accepts employment under the collective agreement, he thereby ratifies and accepts its terms, and his rights and his employer's rights are to be measured and adjudged by that contract. McGregor v. Louisville &. N. R. Co., 244 Ky. 696, 51 S.W.2d 953. In some relations the union contracts as a principal, but, as we have written, a labor union exists for the benefit of its members and is their servant and agent in securing fair and just wages and good working conditions, although it may not bind a member in the exercise of his personal rights. Piercy v. Louisville & Nashville R. Co., 198 Ky. 477, 248 S.W. 1042, 33 A.L.R. 322; Hill v. United Public Workers Union of America, 314 Ky. 791, 236 S.W.2d 887.

We take note of two leading cases of a character different from the present case, the apparent conflict in which cases has caused confusion. The cases, we think, establish a distinction between actions relating to current conduct covered by the Labor Act, for which federal law affords a remedy, and common law actions for damages arising from tortious acts, for which the remedy is to be found in the state courts. . . . .

Garner v. Teamsters, C. & H. Local Union, supra, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, was an appeal from the Pennsylvania Supreme Court's ruling, 373 Pa. 19, 94 A.2d 893, that state courts have no jurisdiction of an action against a union to enjoin coercive picketing. The decision was affirmed.

United Construction Workers, etc. v. Laburnum Construction Co., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025, was an action in a state court by an employer for damages caused by wrongful acts of a union and its members. Judgment for $275,000 was affirmed by the Supreme Court of Virginia. 194 Va. 872, 75 S.E.2d 694. The Supreme Court of the United States in affirming held that Congress did not prescribe any procedure for dealing with consequences of tortious conduct already committed (excepting secondary boycotts); hence, the state court had jurisdiction of the case. Notice was taken in the opinion of the private nature of the claims for damages under state law. .

We need not note the many cases which involve injunctions or other litigation relating to labor practices except National Electric Service Corp. v. District 50, United Mine Workers of America, Ky., 279 S.W.2d 808, 810, in which this court affirmed the action of a circuit court in setting aside an injunction it had granted some months before the Garner case was decided. We and the circuit court held the Garner case applied and prevailed. In the course of our opinion we said:

"We gather from the symposium that, as a matter of simple statutory construction, Section 301 was not intended to authorize a union to enforce in federal court an employee's right to compensation because the complaint set up no violation of a *collective* labor

contract, but only a violation of *individual* employment contracts."

Thus, we have an earlier interpretation of § 301 of the Taft-Hartley Act.

In the Westinghouse case above cited, 348 U.S. 437, 75 S.Ct. 489, 500, 99 L.Ed. 510, the court had difficulty in construing § 301. As pointed out in footnote 26 of the opinion, most federal courts had held that § 301 created federal substantive rights and when called upon to choose between state and federal law had applied the latter, although some courts had drawn a distinction between the law to be applied to matters of "substantive right" and "remedy." In the Westinghouse case a labor union in behalf of its members sued their employer for the enforcement of individual employees' alleged rights to unpaid wages under a collective bargaining agreement. The individuals were not parties to the suit. A recondite opinion by Mr. Justice Frankfurter, joined in by two other Justices, declared that Congress did not confer on the federal courts jurisdiction over such a suit. In the course of the opinion, the learned Justice said: "The employees have always been able to enforce their individual rights in the state courts." In footnote 29 he lists as one of such cases our McGregor v. Louisville & N. R. Co., 244 Ky. 696, 51 S.W. 2d 953, in which we held that a member of a telegraphers' union had the right to sue the employer to secure what he deemed to be his seniority rights. Our eminent Kentuckian, Mr. Justice Reed, concurred in the conclusion that under § 301 a union cannot maintain a suit against an employer for the contractual benefit of its employees for the reason that:

"* * * the claim for wages for the employees arises from separate hiring contracts between the employer and each employee. The union does not undertake to do work for the employer or even to furnish workers. The duty, if any there be, to pay wages to an employee, arises from the individual contract between the employer and employee, not from the collective bargaining agreement. Therefore there is set out no violation of a contract between an employer and a labor organization as is required to confer jurisdiction under § 301. The facts show an alleged violation of a contract between an employer and an employee—a situation that is not covered by the statute."

The Chief Justice and one Associate Justice agreed with the decision but not with all that was said in Justice Frankfurter's opinion. Their view was that § 301 is not sufficiently explicit or clear "to indicate that Congress intended to authorize a union to enforce in a federal court the uniquely personal right of an employee for whom it had bargained to receive compensation for services rendered the employer." Two Justices dissented. One took no part.

■ Therefore, it seems to be the proper interpretation of the opinion and to be the conclusion of the Supreme Court, as the logical converse (since a union may not maintain such a suit for its members in a federal court), that individual employees may maintain a common law action in a state court to recover alleged unpaid wages due them on contracts of hire made under or by virtue of a collective bargaining agreement executed under the provisions of the National Labor Relations Act. We so hold.

A question was raised as to the capacity of the two plaintiffs to bring this as a class action. The importance of the question on the appeal is not great, for the plaintiffs alleged their individual claims each exceed $200, and they have moved for an appeal under the provisions of KRS 21.060. But the large number of persons alleged to have a common justiciable interest in the questions seems to justify a representative or class suit to have determined the jurisdiction of the court and the fact and terms of the bargaining agreement. To this extent there is community of interest of the subject matter.

Our Civil Rule of Practice and Procedure, 23.01, authorizes a class action when one or more plaintiffs will fairly insure the adequate representation of all of numerous persons and the character of right sought to be enforced for the class is

"(3) Several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

As stated in Clay, CR 23.01, Comment, this rule is the same as Federal Rule 23(a) and substantially broadens the scope of class actions formerly allowed under our Civil Code. We recognized a class action could be maintained under § 25 of the Code by a few members of a city police force for the benefit of themselves and other members to recover compensation for services which had not been paid during a period of illegal suspension. And we held that a taxpayer from whom an alleged illegal tax had been collected could sue in behalf of all taxpayers to recover the sums collected. The aggregate was deemed a trust fund which belonged to all. But the court had regard also for the fact that otherwise there would be innumerable suits brought, great hardship would be imposed upon the courts, and confusion and perhaps inequality would result by reason of cases in different jurisdictions—the circuit court in some instances and quarterly and justices courts in others where the amounts were small. Commonwealth v. Scott, 112 Ky. 252, 65 S.W. 596, 55 L.R.A. 597. The trust fund basis is, of course, not in this case, but the question of general liability or nonliability of the employer to many persons is involved and, as well, the multiplicity of actions.

▆ One of the objects in adopting the new Rules of Civil Practice and Procedure was to simplify and expedite litigation. We have no difficulty, therefore, in holding the class action is maintainable under Rule 23 to the extent of having the court construe the bargaining agreement in the particulars

pleaded and to declare the rights of the employer and employees generally in respect to recovery or nonrecovery and to require disclosure to the extent the court in its reasonable discretion deems right and proper. Of course, each particular claim must be considered on its particular merits if liability be generally determined.

The judgment is reversed with directions to take jurisdiction and for proceedings consistent with this opinion.

Judgment reversed. .